UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 2:19-cv-07536-JC <br><br> MEMORANDUM OPINION |

## I. SUMMARY

On August 30, 2019, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of her applications for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively "Plaintiff's Motion" and "Defendant's Motion" (collectively, "Motions"). The Court has taken the Motions under submission

---

[1] Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 7, 2015, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning on October 2, 2015, due to chronic back pain, torn labrum in the left shoulder, tendinitis, asthma, depression, bipolar disorder, anxiety disorder, and other impairments.  (See Administrative Record ("AR") 200-01, 207-08, 246).  An ALJ subsequently examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on January 8, 2018.  (AR 42-88).  On May 23, 2018, the ALJ determined that plaintiff has not been disabled since October 2, 2015, the alleged onset date.  (AR 99-113).  Specifically, the ALJ found:  (1) plaintiff suffers from the following severe impairments:  left shoulder dysfunction, bipolar affective disorder, and anxiety disorder (AR 25); (2) plaintiff's impairments, considered individually or in combination, do not meet or medically equal a listed impairment (AR 26); (3) plaintiff retains the residual functional capacity ("RFC") to perform a reduced range of light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) (AR 26); (4) plaintiff cannot perform her past relevant work (AR 35); (5) plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, specifically retail "marker," hotel housekeeper, and advertising material distributor (AR 35-36); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms are not entirely consistent with the medical evidence and other evidence in the record (AR 33).

On April 22, 2019, the Appeals Council denied plaintiff's application for review of the ALJ's decision. (AR 9-11).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905. To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

///

///

## B. Federal Court Review of Social Security Disability Decisions

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV. DISCUSSION

Plaintiff claims that the ALJ erred by (1) rejecting the opinion of the treating psychiatrist, Dr. Celia Wood, M.D.; and (2) failing to include plaintiff's severe mental impairments in the RFC assessment.[2] (Plaintiff's Motion at 11-17). For the reasons stated below, the Court concludes that a reversal or remand is not warranted.

### A. The ALJ Did Not Err in Assessing the Treating Psychiatrist's Medical Opinion

#### 1. Pertinent Law

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians." 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); 20 C.F.R. §§ 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). In turn, an examining, but non-treating

---

[2]The Court addresses these issues in a different order than presented in Plaintiff's Motion.

physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

A treating doctor's opinion, however, is not necessarily conclusive as to either a physical or mental condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject the uncontroverted opinion of a treating source by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where a treating source's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted). An ALJ must provide more than mere "conclusions" or "broad and vague" reasons for rejecting a treating or examining doctor's opinion. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted). "[The ALJ] must set forth his own interpretations and explain why they, rather than the [doctor's], are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 2. Analysis

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Woods, her treating psychiatrist. (Plaintiff's Motion at 15-17). Dr. Woods completed an assessment of plaintiff's functional limitations in 2018. (AR 3499-3504). Dr. Woods opined, among other things, that plaintiff is effectively unable to accept

6

instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without unduly distracting them or becoming distracted; to interact appropriately with the general public; to deal with the stress of skilled or semiskilled work; to perform at a consistent pace without unreasonable rest periods; and to complete a normal workday and workweek without interruptions from psychologically based symptoms. (AR 3501). Dr. Woods further opined that plaintiff has a "seriously limited" ability to maintain attention for a two-hour period; to respond appropriately to changes in a routine work setting; to understand, remember, and carry out detailed instructions; to deal with normal work stress; and to be aware of normal hazards and take appropriate precautions. (AR 3501). Dr. Woods indicated that plaintiff's impairments would cause her to miss about four days of work per month. (AR 3503). Dr. Woods supported her assessment by noting plaintiff's own reporting. (AR 3501-02).

The ALJ rejected the "extreme limitations" in Dr. Woods's treating opinion because they were inconsistent with Dr. Woods's own treatment notes, as well as other medical records, which the ALJ found to consistently show plaintiff to be "alert, fully oriented, with appropriate mood and affect, normal speech, linear and goal-directed thought process, intact memory, concentration and cognition."[3] (AR 34). This is a legitimate ground for rejecting the treating opinion. See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.") (citations omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ properly rejected

---

[3] While the ALJ rejected Dr. Woods's opinion, the ALJ gave "great weight" to the opinion of Dr. Tiffany Tsai, M.D., a psychiatrist who treated plaintiff in 2016 and noted plaintiff had only moderate mental limitations. (AR 34; see, e.g., AR 3508). Another assessment of plaintiff's mental functioning was provided by Dr. Michael Cohn, Ph.D., who performed a consultative examination on May 19, 2016, and found no mental limitations. (AR 1198-1202). The ALJ did not give significant weight to Dr. Cohn's opinion.

7

treating physician's opinion where "treatment notes provide[d] no basis for the functional restrictions [physician] opined should be imposed on [claimant]"). Moreover, substantial evidence in the record supports this assessment. (See, e.g., AR 507, 1136, 1209, 1199-1201, 2016, 2401, 3456, 3506-07, 3603-04, 3608-09, 3611, 3615-16). Although plaintiff points to other records reflecting symptoms such as irritability, hostility, depression, mild distractibility, and poor judgment and insight (Plaintiff's Motion at 16-17; see AR 3507, 3512, 3519, 3527, 3535, 3559, 3584, 3618, 3623), the ALJ reasonably determined that the record overall was inconsistent with the severe limitations opined by Dr. Woods. See Trevizo, 871 F.3d at 674-75 ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.") (citation omitted).

Furthermore, contrary to plaintiff's purported social limitations, the ALJ noted that plaintiff reported "independent participation in community activities including attending political rallies, and volunteering for activities, and ice skating," along with "significant socializing." (AR 33; see, e.g., AR 284, 1199, 3510, 3610, 3652). The ALJ reasonably found that plaintiff's ability to engage in a range of social activities conflicts with Dr. Woods's opinion and reflects a greater ability to get along with others in a work setting. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601-02 (9th Cir. 1999) (ALJ may reject medical opinion that is inconsistent with other evidence of record including claimant's statements regarding daily activities).

The ALJ rejected Dr. Woods's opinion of extreme limitations also because plaintiff's noncompliance with medications and therapy was "repeatedly indicated by treating sources including Dr. Woods." (AR 34). This, too, is a legitimate and convincing basis for rejecting the opinion. See, e.g., Owen v. Astrue, 551 F.3d 792, 799-800 & n.3 (8th Cir. 2008) ("claimant's noncompliance" with prescribed treatment (e.g., "[failure to] follow regular exercise and dietary plans") may be considered "inconsistent with a treating physician's medical opinion"); Ohman v.

Berryhill, 2018 WL 1316903, *9 (E.D. Cal. Mar. 14, 2018) ("A plaintiff's failure to follow a physician's prescribed course of treatment is a specific and legitimate reason for rejection the physician's opinion.") (citations omitted); see generally 20 C.F.R. § 404.1530(b) (claimant "do[es] not follow [a doctor's] prescribed treatment without a good reason" may not be found disabled). This ground is also supported by substantial evidence in the record. (See, e.g., AR 3526, 3558, 3583, 3586). Dr. Woods stated, for example, that plaintiff had "change[d] dosages or stop[ped] medications without physician's advisement," and that plaintiff had decreased her individual therapy sessions to once monthly because she was not "motivated to participate with goals." (AR 3499). Plaintiff contends this behavior is due to her mental impairments that render her unable to follow instructions. (Plaintiff's Motion at 16). However, the record reflects other reasons, such as concern about her weight. (See, e.g., AR 3586 ("She won't go back on Seroquel, even though it worked, b/c of weight gain.")). The ALJ thus reasonably considered this basis in discounting the limitations in Dr. Woods's opinion, and the Court will not second-guess that determination. See Trevizo, 871 F.3d at 674-75.

Accordingly plaintiff has failed to demonstrate any material error in the ALJ's assessment of Dr. Woods's treating opinion – an assessment based on clear, convincing, specific, and legitimate reasons, backed by substantial evidence in the record.

### B. Any Error in the ALJ's Failure to List Mental Impairments in the RFC Is Harmless

#### 1. Pertinent Law

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process. 20 C.F.R. § 416.929(a), (d). The ALJ does this, in part, by assessing what physical and/or mental impairments limit the claimant's

///

ability to work, and whether such impairments prevent the claimant from performing gainful employment.

At step two, for example, the ALJ determines whether the claimant has any medically determinable impairments that qualify as "severe," meaning that they lasted at least for a continuous period of twelve months and have had more than a minimal impact on the claimant's ability to work. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 404.1521, 416.909, 416.920(a)(4)(ii), 416.921; see also 42 U.S.C. §§ 423(d), 1382c(a)(3); Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987); Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005).

Later, at steps four and five, the ALJ determines whether the claimant, with all of her physical and/or mental impairments, can perform the demands of gainful employment, based on either the claimant's past relevant work, at step four, or other work that exists in "significant numbers" in the national economy, at step five. In order to do so, the ALJ first determines the claimant's RFC. RFC represents "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). When assessing RFC, an ALJ must evaluate "on a function-by-function basis" how particular impairments affect a claimant's abilities to perform basic physical, mental, or other work-related functions. SSR 96-8p at *1 (citing, in part, 20 C.F.R. §§ 404.1545, 416.945). An ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of a claimant's subjective symptoms (*e.g.*, pain), that may reasonably be attributed to a medically determinable impairment. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted); see 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (residual functional capacity is assessed "based on all of the relevant evidence in [the] case record"). If an RFC assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." SSR 96-8p; see also Vincent v. Heckler, 739 F.2d 1393,
///

1394-95 (9th Cir. 1984) (an ALJ must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence).

When the ALJ's inquiry proceeds to step five, the burden is on the Commissioner to prove that the claimant, with her RFC, age, education, and work experience, can perform other work that exists in "significant numbers" in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c), 416.920(a)(4)(v) & (g), 416.960(c); Heckler v. Campbell, 461 U.S. 458, 461-62 (1983); see Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (describing legal framework for step five) (citations omitted). One way the Commissioner may satisfy this burden is by obtaining testimony from an impartial vocational expert (alternatively, "VE") about the type of work such a claimant is still able to perform, as well as the availability of related jobs in the national economy. See Gutierrez v. Colvin, 844 F.3d 804, 806-07 (9th Cir. 2016) (citation omitted); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01).

When a vocational expert is consulted at step five, the ALJ typically asks the VE at the hearing to identify specific examples of occupations that could be performed by a hypothetical individual with the same characteristics as the claimant. Zavalin, 778 F.3d at 846 (citations omitted); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012) (citations omitted). The VE's responsive testimony may constitute substantial evidence of a claimant's ability to perform such sample occupations so long as the ALJ's hypothetical question included all of the claimant's limitations supported by the record. See Hill, 698 F.3d at 1161-62 (citations omitted); Robbins, 466 F.3d at 886 (9th Cir. 2006) (citation omitted).

**2. Analysis**

Plaintiff contends that the ALJ erred in failing to include any restrictions from plaintiff's mental impairments in the RFC assessment, despite finding at step two that these impairments were severe. (Plaintiff's Motion at 11-15). Specifically, the

ALJ found at step two that her bipolar affective disorder and anxiety disorder were severe impairments, but the ALJ's decision includes only reaching and handling limitations in the RFC, omitting any mental limitations.[4] (AR 25-26).

However, any error in the ALJ's failure to list mental limitations in the decision's RFC assessment is harmless because the ALJ did include mental limitations in the hypothetical to the VE. At the hearing, the ALJ asked the VE whether there were any jobs existing in significant numbers in the national economy that could be performed by a person with plaintiff's limitations – including the reaching/handling limitations, as well as non-exertional limitations to low stress work and only occasional interaction with coworkers. (AR 85).

The VE testified that a person with these limitations could work as a "marker" in retail, a hotel housekeeper, and an advertising materials distributor. (AR 85-86). The ALJ then relied on that testimony at step five, to conclude that plaintiff can perform jobs that exist in significant numbers in the national economy. (AR 35-36). Because the ALJ included the mental limitations in the hypothetical to the VE, and relied on the VE's testimony at step five, any failure to list the mental limitations in the RFC within the decision is harmless. See Treichler, 775 F.3d at 1099 (ALJ error harmless if inconsequential to the ultimate nondisability determination); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJ's reliance on VE testimony was proper where hypothetical contained all plaintiff's limitations that were found credible and supported in record); Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (considering VE testimony reliable if the hypothetical posed includes all of claimant's functional limitations, both physical and mental supported by the record).

///

---

[4] The ALJ's decision states that plaintiff has the RFC to perform light work "except for frequent reaching laterally and in front with the left upper extremity, with only occasional overhead reaching and handling." (AR 26).

Plaintiff additionally contends that the ALJ failed to "properly evaluate the record" and articulate how he considered the medical opinions regarding plaintiff's mental limitations. (Plaintiff's Motion at 14-15). However, throughout the decision, the ALJ clearly and specifically reviewed and assessed the evidence and opinions related to plaintiff's mental impairments. The ALJ's reasons for rejecting the more extreme assessments, and instead finding plaintiff only moderately limited in her ability to interact with others and handle stress, are apparent from the ALJ's decision. Plaintiff therefore fails to identify any material error on this point, or to persuasively dispute the mental limitations included in the hypothetical to the VE, which are supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 12, 2021

                                          /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE